**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

*In re* **P.W.**

**No. 20-0827** (Hampshire County 19-JA-55)

**MEMORANDUM DECISION**

Petitioner Mother C.R., by counsel Jeremy B. Cooper, appeals the Circuit Court of Hampshire County's September 4, 2020, order terminating her parental rights to P.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Julie A. Frazer, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2019, the DHHR filed a child abuse and neglect petition against petitioner and her boyfriend, M.W.[2] The DHHR alleged that it received a referral of a disturbance at petitioner's home. Police officers responded to the home and reported that it smelled strongly of marijuana. Petitioner claimed M.W. was smoking marijuana and left the home to purchase heroin and, upon returning, smacked petitioner in the face while she was holding then-five-month-old P.W. Petitioner further alleged that M.W. then grabbed a knife, threatened to commit suicide, and locked petitioner and P.W. out of the home. Police officers found heroin and uncapped needles in the home. Petitioner appeared lethargic but denied using drugs. A few days later, a Child Protective Services ("CPS") worker spoke to petitioner about the incident. Petitioner denied that M.W. hit

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]M.W. is the biological father of P.W.

1

her and claimed she had only told the officers that he had done so because she was frightened. The CPS worker implemented a safety plan. Over the course of the following weeks, petitioner maintained that M.W. had not hit her and that she had kicked him out of the home. CPS workers spoke to petitioner's grandfather, who stated he did not believe that petitioner was using drugs but opined that M.W. "brainwashed" her. The grandfather reported that petitioner and M.W. argued constantly and that petitioner's older child, B.R.,[3] is terrified of the situation, claiming that B.R. saw M.W. hit petitioner.

The DHHR alleged that it received a second referral that P.W. had facial bruising reportedly caused when M.W., while holding P.W., attempted to reach for petitioner through a car window, causing the child's head to repeatedly hit the car door. The referral further indicated that petitioner and M.W. did not separate following the initial incident of domestic violence and that petitioner had a history of downplaying the level of violence in their relationship. A CPS worker investigated the referral and observed bruising on the bridge of P.W.'s nose. Petitioner denied that M.W. injured the child and claimed that she dropped her cellphone on the child's face. Based on the foregoing, the DHHR alleged that the children were in imminent danger and requested custody.

Petitioner waived her preliminary hearing, and the circuit court held an adjudicatory hearing in December of 2019. Petitioner stipulated to the allegations contained in the petition. Specifically, petitioner stipulated that there were drugs in the home; that she permitted M.W., an inappropriate caregiver, to be around the children; and that there was domestic violence in the home. The circuit court accepted her stipulation, adjudicated her as an abusing parent, and later granted her a post-adjudicatory improvement period following the adoption of a case plan. As part of the terms and conditions of the improvement period, petitioner was required to address her issues with domestic violence and gain insight into her lack of protective parenting skills by participating in counseling, adult life skills classes, and parenting classes; submit to drug screens; maintain employment and housing; undergo a psychological evaluation and comply with any resulting recommendations; and attend supervised visits with the child. M.W. was also granted an improvement period. Because petitioner and M.W. expressed their intention to remain together as a couple, the circuit court cautioned them that one parent's noncompliance could affect the other parent's ability to succeed in their improvement period.

At a status hearing held in March of 2020, the DHHR advised the circuit court that petitioner and M.W. were participating in services and that their drug screens had been negative. Subsequently, M.W. was discharged from inpatient drug treatment for violating facility restrictions. Following his discharge, M.W. stopped participating in all services, including supervised visitation. Petitioner's participation became sporadic, although she reported kicking M.W. out of the home due to his noncompliance with services. Eventually, petitioner requested an extension to her improvement period.

---

[3]Although B.R. was involved in the proceedings below, the circuit court ultimately took no action in regard to petitioner's parental rights to this child at disposition, given his placement in the nonabusing father's home in Virginia. As such, the child is not at issue in this appeal, as petitioner alleges only that the circuit court erred in terminating her parental rights to P.W.

In June of 2020, the circuit court held a review hearing and addressed petitioner's motion for an extension to her improvement period. Petitioner stated that she had passed all her drug screens and maintained employment. Petitioner conceded that she was falling asleep during her visits and services but stated that her hours at her work had increased due to the COVID-19 pandemic and that she was working the night shift. Petitioner denied that she was in a relationship with M.W. The circuit court found that petitioner was not adequately participating in services and deferred ruling on her motion for an extension but ordered the DHHR to continue providing services to her throughout the duration of her existing improvement period. The circuit court also ordered that petitioner's visits be moved to an earlier time to accommodate her work schedule. Given M.W.'s noncompliance, the circuit court reminded petitioner that remaining in a relationship with him would result in a finding that she failed her improvement period.

The circuit court held a dispositional hearing in August of 2020. A service provider testified that petitioner complied with parenting and adult life skills classes in January, February, and March of 2020 but that petitioner attended only one session in April of 2020 and blamed missing classes on falling asleep. Petitioner was discharged from services due to her noncompliance. Regarding supervised visitation, the service provider testified that petitioner consistently participated through February of 2020. In March of 2020, petitioner, from her home, attended a virtual visitation and M.W. was seen in the background, yelling and shouting. Petitioner had what appeared to be a bruise on her face, but it was not confirmed due to poor quality of the video. Petitioner also missed a visit in April of 2020 and in May of 2020 due to falling asleep. However, a second service provider testified that petitioner consistently visited with P.W. after May of 2020. According to the provider, the visits with P.W. went well, and petitioner acted appropriately.

Thereafter, a CPS worker testified that the DHHR was recommending termination of petitioner's parental rights. Although petitioner consistently provided negative drug screens throughout the proceedings, she failed to participate in counseling to address her issues with domestic violence. Specifically, petitioner failed to attend any counseling sessions in June of 2020, attended only one session in July of 2020, and attended only one session in August of 2020. Further, petitioner was discharged from parenting and adult life skills classes due to noncompliance. The CPS worker suspected that petitioner and M.W. were still in a relationship and that domestic violence remained an issue given reports of a bruise on petitioner's face and M.W.'s erratic behavior in the background of the virtual visitation.

Petitioner's step-grandmother testified that she received a video showing petitioner and M.W. together at a carwash as recently as June 26, 2020. Petitioner's step-grandmother opined that petitioner lied about her relationship with M.W., that M.W. "beat" her, and that petitioner had chosen M.W. over her children. The DHHR submitted photographs and a surveillance video showing petitioner and M.W. together at the carwash.

Petitioner testified that she met with M.W. on June 26, 2020, to return some of his personal items. Petitioner stated, "I met him and asked if he [would] help me wash my car and clean out my car and get the rest of [his things] out because I don't want to be with him." Petitioner denied having seen M.W. since that time. Petitioner also denied that the bruise observed on her face was from M.W. Rather, petitioner claimed that she fell out of her car and hit her face. Petitioner stated

3

that she did not have any issues with staying awake for services and visits until her work hours were extended due to COVID-19. Petitioner claimed that if her children were in the home with her, she would have a reason to stay awake and would not fall asleep. Petitioner further claimed that she "ha[s] never been a bad mother." Petitioner also testified that her bills were paid in full and that she was financially stable.

By order entered on September 4, 2020, the circuit court terminated petitioner's parental rights to P.W. The circuit court found that, per petitioner's own testimony, she contacted M.W. in direct contravention of the admonitions of the court. The circuit court further found that petitioner's testimony denying a continued relationship with M.W. was "not credible or believable." Finally, the circuit court found that petitioner failed to substantially or meaningfully comply with the terms and conditions of her improvement period, leaving the conditions of neglect giving rise to the case unresolved. The circuit court concluded that there was no reasonable likelihood that petitioner could correct the conditions of abuse or neglect in the near future as she demonstrated an inadequate capacity to resolve the conditions of neglect on her own or with help. The circuit court also concluded that the best interests of the child necessitated termination of petitioner's parental rights. Petitioner appeals the dispositional order.[4]

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights rather than employing a less-restrictive dispositional alternative. Petitioner "acknowledges her imperfect record in this case" but claims that her "prospect of parental improvement was not merely speculative." According to petitioner, the circuit court gave insufficient weight to the evidence presented that petitioner was improving and focused too heavily on her financial instability, the fact that she occasionally fell asleep during supervised visitation, and her contact with M.W. on June 26, 2020. She also argues that the testimony of a CPS worker impermissibly shifted the burden to her to prove that she was not in a relationship with M.W.

---

[4]M.W.'s parental rights were also terminated below. The permanency plan for P.W. is adoption by her great-grandmother.

4

West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(d)(3) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has

> not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

Here, the evidence demonstrated that petitioner failed to adequately respond to or follow through with services designed to reduce or prevent the abuse or neglect of the child. While petitioner had periods of compliance during the proceedings below, she ultimately failed to address her issues with domestic violence by remaining in a relationship with M.W.[5] The circuit court repeatedly warned petitioner that continuing her relationship with M.W. would result in failing her improvement period. While petitioner claims that the CPS worker's testimony essentially shifted the burden of proving that she was not in a relationship with M.W. to petitioner, there is nothing in the record to suggest that the circuit court required petitioner to prove this fact. Moreover, the record demonstrates that petitioner was discharged from some services due to her noncompliance and failure to attend several of her therapy sessions. Although petitioner blames missing services and falling asleep during visitation on her night shift work schedule, we remind petitioner that when a parent is granted an improvement period "the [parent] shall be responsible for the initiation and completion of all terms of the improvement period." W. Va. Code § 49-4-610(4)(A).

To the extent that petitioner claims that she should have been granted a less-restrictive alternative to the termination of her parental rights, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be

---

[5]To the extent that petitioner argues that her testimony proved she had ended her relationship with M.W., we determine that the circuit court was free to weigh the evidence and find that petitioner's self-serving testimony lacked credibility in light of the totality of the evidence presented. Thus, we decline to disturb its credibility determinations on appeal. *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.").

substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Having reviewed the record, we cannot find that the circuit court erred in concluding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare. Therefore, we likewise find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 4, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: October 13, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton